**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000549
19-MAY-2023
07:54 AM
Dkt. 81 MO**

NO. CAAP-17-0000549

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JAMES KREITMAN, Plaintiff-Appellee,
v.
JAMES MILTON DAY, JR. and JENNIFER ELLEN DEMOSS DAY,
Defendants-Appellants,
and
JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100;
and DOE CORPORATIONS 1-100, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CC15100253K)


**MEMORANDUM OPINION**
(By: Ginoza, Chief Judge, Hiraoka and Nakasone, JJ.)

Defendants-Appellants James Milton Day, Jr. and
Jennifer Ellen DeMoss Day (collectively, the **Days**) appeal from
the **Judgment** in favor of Plaintiff-Appellee James **Kreitman**
entered on June 16, 2017.[1] For the reasons explained below, we
vacate the Judgment in part and remand for further proceedings.

This case is about the Days' alleged failure to
disclose a leaking water line on real property on Hawai'i island
(the **Property**) they sold to Kreitman.[2] The Days listed the
Property for sale in September 2012. The listing price was

---

[1] The Honorable Melvin H. Fujino presided.

[2] The facts in this section come from the unchallenged findings of
fact made by the circuit court after a jury-waived trial. See Okada Trucking
Co. v. Bd. of Water Supply, 97 Hawai'i 450, 459, 40 P.3d 73, 82 (2002) (noting
that unchallenged findings of fact are binding on the appellate court).

$3.7 million.  They signed a "Seller's Real Property **Disclosure Statement**" on January 30, 2013.  The Disclosure Statement did not mention water leaks or excessive water usage.

During February 2013, a home inspection was conducted for potential buyers of the Property.  The inspector's written report (the **Woodbury Inspection Report**) stated:

> Plumbing:
>
> 1) The water shut off valve is located near the garage in a recessed box.  The valve and pressure regulator here are partially buried in the soil, and the valve handle is quite corroded.  Remove some of the soil and replace the valve handle.
>
> 2) There [sic] disclosure of apparent leakage in the plumbing system, as bills are apparently high.  The caretaker present during my inspection related a leak detection specialist was engaged to solve this problem, but did not.  Have a licensed plumber test for any leakage in the water supply system.

The potential buyers did not purchase the Property.

The Property was on the market for over a year.  On December 30, 2013, Kreitman offered to buy the Property, subject to various contingencies.  The next day, the Days' realtor asked them if she should provide Kreitman with the Woodbury Inspection Report.  The Days responded by email: "Hold on to the Woodbury Inspection Report.  Do not forward it to the buyer.  The buyer may request an inspection and we can address items on his inspection report when we see what the inspector comes up with." The Days then accepted Kreitman's offer.  The **Purchase Contract** was signed on December 31, 2013.  The purchase price was $2.7 million.

On January 3, 2014, Jennifer Day signed an **Amendment** to the Disclosure Statement.  The Amendment stated:

> 19.   Water Line: In preparing the property for sale, the sellers observed that the water bills showed abnormally high consumption and contracted with Kona Labs to perform a leak detection on the irrigation and main water supply lines into the house.  The initial test performed was an air test and it disclosed line leakage.  The irrigation lines were isolated from the main water lines and retested with air and leakage was found around several valves.  The valves were repaired and retesting showed the repairs to be tight.  The main water lines were tested with helium and were determined to be leaking in several places.  Three large water leaks

were discovered and repaired where the water line crossed the gas line and there is one leak that is in the process of being repaired.

26. Pool: In getting the property ready for sale, the sellers contracted with Big Island Leak Detection to test the pool for leakage. A small 30-gallon per day leak was detected. Pacific Blue H20 has been contracted to make the repairs in early January 2014 using a high-pressure epoxy injection to permanently seal the hairline cracks.

Additional: The filter in the koi pond is currently malfunctioning, and is in the process of being repaired or replaced. Work to be completed prior to closing.

Kreitman had the Property inspected on January 6, 2014. On January 11, 2014, the Days and Kreitman signed **Addendum #1** to the Purchase Contract. Kreitman received a $10,000 plaster credit for the pool, and the Days were required to complete repair work to the pool and koi pond before closing. The transaction closed and title to the Property was conveyed to Kreitman on February 7, 2014.

About three months later, Kreitman received a water bill showing the Property using over 5,000 gallons of water per day. At that time, the Property was unoccupied but was being maintained by a landscaper (Lindsey **Swan-Lindsey**) who had previously worked for the Days. At Swan-Lindsey's suggestion, Kreitman contacted Stephen **Edmonds**, an irrigation and landscaping contractor. Edmonds found and repaired a leak in the water line under the front lawn. He determined that there were no other leaks in the water line going away from the house.

Kreitman then contacted Ron **Miller**, the contractor who had installed the original plumbing on the Property. Miller took Gary **Taylor**, a plumber, to the Property. Taylor determined there were leaks somewhere outside the house. He recommended replacing the water line. Kreitman had the line replaced. But water leaks persisted.

Adam **Broderson**, a landscaper, went to the Property. He shut off the backflow preventer on the water line coming into the house. He determined there was a leak somewhere between the backflow preventer and the Hawaiʻi county water meter. Broderson replaced and re-routed that portion of the water line. After the

work was completed the water bill for the Property — then occupied — averaged 700 gallons per day.

Kreitman filed the action below on June 29, 2015. The complaint alleged breach of contract, breach of implied covenant of good faith and fair dealing, violation of Hawaii Revised Statutes (**HRS**) Chapter 508D (Mandatory Seller Disclosures in Real Estate Transactions), and intentional and negligent misrepresentation.

The Days moved to dismiss the complaint. The circuit court denied the motion. A jury-waived trial was held on January 17 and 18, 2017. The parties submitted amended stipulated findings of fact on January 27, 2017. The court entered findings of fact, conclusions of law, and an order on April 3, 2017 (**Findings, Conclusions, and Order**). The court found in favor of Kreitman and against the Days, awarded damages in the lump sum of $37,337.40, and awarded Kreitman attorneys' fees in an amount to be determined. The Judgment, entered on June 16, 2017, awarded Kreitman an additional $39,334.35 in attorneys' fees and $4,868.37 in costs.[3]

This appeal followed. The Days raise six points of error, which we've consolidated for discussion purposes: **(1)** findings of fact (**FOF**) nos. 68, 70, and 76 were clearly erroneous; **(2)** conclusions of law (**COL**) nos. 4, 5, 6, 7, 8, 9, 10, and 11 were wrong;[4] **(3)** the circuit court erred in its award and calculation of damages; and **(4)** the circuit court erred in its award and calculation of Kreitman's attorneys' fees.

> **1.    FOF nos. 68, 70, and 76 were not clearly erroneous.**

We review findings of fact under the "clearly erroneous" standard. <u>Est. of Klink ex rel. Klink v. State</u>, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007). A finding of fact is clearly erroneous when the record lacks substantial evidence to

---

[3]    The Days have not appealed the cost award.

[4]    The opening brief fails to comply with Hawaiʻi Rules of Appellate Procedure 28(b)(4)(C) but it appears that the Days are challenging these COLs.

support the finding or when, despite substantial evidence to support the finding, we are left with a definite and firm conviction that a mistake has been committed. Id. "Substantial evidence" is "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (citations omitted).

The circuit court found:

> 68. Steve Edmonds told Lindsey Swan-Lindsey that from his inspection of the subject property and judging from the rate at which the water meter was spinning, that there were additional, substantial leaks that needed to be fixed. He further stated that concrete in portions of the subject property would probably need to be removed and the majority of the water lines would need to be replaced in order to remedy the leaks. Lindsey Swan-Lindsey reiterated this to the [Days] via a telephone call to Mr. James Day. Ex. TT, at 28. See also Ex. RR; First Am. Stip. FOF, at ¶¶ 30-31; Trial Test. of Lindsey Swan-Lindsey.

Exhibit TT is the transcript of Edmonds' deposition, portions of which were admitted into evidence by stipulation. Edmonds testified:

> Q    Do you recall telling Mrs. Lindsey that judging from the rate at which the meter was spinning, there were additional and substantial leaks that needed to be fixed?
>
> A    Yes.
>
> Q    Do you also recall telling her that concrete portions of the subject property would probably need to be removed, and the majority of the waterlines would need to be replaced in order to remedy the leaks?
>
> A    I believe we had that conversation, yes. The installer of the original waterline placed it far under a sidewalk, so it was impossible to get to.

Edmonds did not say when that conversation took place.

The stipulated findings of fact state:

> 30. Mrs. Lindsey claims that Mr. Day told her that they had spent enough money trying to fix the water leaks and they were not going to spend any more.
>
> 31. The Days deny receiving such a telephone call from Mrs. Lindsey.

During trial Swan-Lindsey testified that she worked for the Days when they owned the Property. They asked her to

investigate the water bill because it was "high."  Swan-Lindsey asked "our irrigation guy" Edmonds to look for leaks on the two-acre Property.  There was nothing obvious, so she hired a leak inspector named Frank.  Frank found and fixed "several smaller things in the irrigation lines" but that did not completely solve the problem.  Swan-Lindsey then hired Kona Labs, which found two or three more leaks.  Edmonds fixed those leaks and "the water meter was better for sure but, again, it was still [spinning.]"

Swan-Lindsey then talked with Jennifer Day and either James Day or his brother, Joe Day.  She testified:

> I let them know that we had repaired several leaks and that the meter was still going, and then it was [Edmond]'s suggestion that we lay a whole new water line.
>
> Q      Did you say anything to them about removal of concrete?
>
> A      Yeah.  Basically the water line, the existing main water line looked like it was underneath the sidewalk of the house.  So not really an easy place to get to and repair.  So it was advised that we put a whole new water line outside of the concrete in the plants there so we could get to it and fix it.

On cross-examination Swan-Lindsey testified:

> Q      And after seeing that the water meter was still spinning but slowed down, you called Mr. Day on your telephone?
>
> . . . .
>
> A      Yes.

The Days argue that "[i]t was clearly erroneous for the Circuit Court to find that on or around January 13, 2014, [Swan-Lindsey] called Mr. Day."  They point out that Exhibit RR (Verizon Wireless telephone bills for "Lindsay [sic] Swan") "reveal[s] she did not call Mr. Day on or around January 13, 2014."  The Days' reply brief argues that FOF no. 68 "clearly falls in the timeline of facts during the January 13, 2014 period."  Although FOF no. 68 does not specify <u>when</u> Swan-Lindsey called James Day, the parties stipulated that Edmonds "performed repairs on the water line . . . on January 13, 2014."  The parties also stipulated that "Mr. Edmonds prepared and sent an

invoice dated January 13, 2014 to the Days for the last of his water line repairs along with pictures and a video of the leaking pipe." The circuit court found, in FOF no. 75, that "[t]he Days' testimony that they were not aware of the unresolved water issues as of the time of closing was unconvincing." "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (citation omitted). FOF no. 68 is supported by substantial evidence and is not clearly erroneous.

The circuit court found:

> 70. [The Days] did not amend their disclosure statement or make any reference to [Kreitman] about the leaks identified and left unrepaired by Steve Edmonds on January 13, 2014, or the potential for future leaks as referenced by Steve Edmonds. See Trial Test. of James Kreitman.

The Days argue they did not know there were "additional, substantial leaks that needed to be fixed" or the "potential for future leaks." We conclude there is substantial evidence to support FOF no. 70, including the evidence supporting FOF no. 68, described above. FOF no. 70 is not clearly erroneous.

The circuit court found:

> 76. Approximately three (3) months after the close of escrow, [Kreitman] became aware of a water problem when he received his first full water bill. See Trial Test. of James Kreitman; Trial Test. of Terri Kreitman.

The Days argue that Kreitman admitted reading the Amendment to the disclosure statement, and therefore knew about the water problem. The Amendment told Kreitman about leakage in the irrigation lines, which "were repaired and retesting showed the repairs to be tight[,]" and from the main water lines, three of which were repaired and one "that is in the process of being repaired." The Amendment did not mention the possibility of additional leaks, or that the county water meter was still

spinning.  Instead, the Amendment appears to indicate that all
leaks had been identified and were repaired, or would be
repaired, before closing.  FOF no. 76 is not clearly erroneous.

### 2.     COL nos. 4, 5, 6, 7, 8, 9, 10, and 11 were not clearly erroneous or wrong.

A trial court's label of a finding of fact or a
conclusion of law does not determine the standard of review.  In
re JK, 149 Hawaiʻi 400, 406, 491 P.3d 1179, 1185 (App. 2021)
(citing Crosby v. State Dep't Of Budget & Fin., 76 Hawaiʻi 332,
340, 876 P.2d 1300, 1308 (1994)).  Whether a determination is a
finding of fact or a conclusion of law is a question of law;
thus, the label's accuracy "is freely reviewable by reviewing
courts."  Kilauea Neighborhood Ass'n v. Land Use Comm'n, 7 Haw.
App. 227, 229, 751 P.2d 1031, 1034 (1988).

We review conclusions of law under the "right/wrong"
standard.  Klink, 113 Hawaiʻi at 351, 152 P.3d at 523.  A
conclusion of law supported by the trial court's findings of fact
and reflecting an application of the correct rule of law will not
be overturned.  Id.  When a conclusion of law presents mixed
questions of fact and law, we review it under the "clearly
erroneous" standard because the court's conclusions are dependent
on the facts and circumstances of each individual case.  Id.

The circuit court concluded:

> 4.    [The Days] have breached their obligations under
> Paragraphs I-1 and I-2 of the Purchase Contract by failing
> to disclose material evidence of the true extent of water
> leaks at the subject property in the Amendment to Real
> Property Disclosure Statement dated 1/30/13 for [the
> Property], which was executed by Jennifer Day on January 3,
> 2014, or to amend the disclosure statement after January 13,
> 2014, when advised of additional leaks of an unknown amount
> and location that directly, substantially and adversely
> affected the value of the subject property.

COL no. 4 is a combined finding and conclusion.  The
Purchase Contract provided:

> **I-1    Seller's Obligation to Disclose**.  Pursuant to Hawaii
> Revised Statutes Chapter 508D (for the sale of
> residential real property), Seller is obligated to
> fully and accurately disclose in writing to Buyer any
> fact, defect, or condition, past or present, that

8

would be expected to measurably affect the value of the Property to a reasonable person (a "material fact"). No later than <u>Five (5)</u> days [ten (10) days if left blank] from the Acceptance Date, Seller shall provide Buyer with a written Disclosure Statement signed and dated by Seller within six (6) months before or ten (10) days after the Acceptance Date. Such Disclosure Statement shall be prepared in good faith and with due care and shall disclose all material facts relating to the Property that: (i) are within the knowledge or control of Seller; (ii) can be observed from visible, accessible areas; or, (iii) are required to be disclosed under Section 508D-4.5 and Section 508D-15 of the Hawaii Revised Statutes. Seller acknowledges and agrees that the disclosure requirements under Chapter 508D are in addition to all other disclosure obligations of Seller required by law relating to the sale of residential real property. Furthermore, Seller's obligations under Hawaii Revised Statutes Chapter 508D, as amended, regarding mandatory disclosure of all documents pertaining to the Property are set forth in Section M-1 below.

**I-2  Seller's Obligation Upon Later Discovered Information.** Under Chapter 508D, if after Seller delivers a Disclosure Statement to Buyer and prior to closing, Seller becomes aware of information that was not previously disclosed or that makes any statement in the Disclosure Statement inaccurate, and said information directly, substantially, and adversely affects the value of the Property (called "Later Discovered Information" in this paragraph), then Seller shall provide an Amended Disclosure Statement (a written statement prepared by Seller or at Seller's direction) to Buyer within <u>Three (3)</u> days [or ten (10) days if left blank] after the Seller's discovery of the inaccuracy, and in any event, no later than twelve noon of the last business day prior to the recorded sale of the Property. Buyer's rights upon discovery of Later Discovered Information and/or receipt of the Amended Disclosure Statement are found in Paragraph I-4. The information described in this paragraph Later Discovered Information may arise from many sources, including but not limited to, title report(s), inspection report(s), survey report, termite inspection report, condominium, cooperative, subdivision, PUD, homeowner's/planned community documents, and rental property matters.

COL no. 4 is supported by the circuit court's findings of fact and the parties' stipulated facts, and reflects an application of the correct rule of law.

The circuit court concluded:

> 5.  Negligent misrepresentation requires that: (1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation. <u>Blair v. Ing</u>, 95 Haw. [sic] 247, 269, 21 P.3d 452, 474 (2001).

> 6.    The [Days]' failure to disclose material evidence of the extent of water leaks at the subject property before execution of the Amendment to Real Property Disclosure Statement dated 1/30/13 for [the Property] or to amend the disclosure statement after January 13, 2014, when advised of additional leaks of an unknown amount and location, constitutes negligent misrepresentation.  The disclosures and non-disclosure by [the Days] were relied upon by Plaintiffs [sic] to their detriment.

COL no. 5 is right.  COL no. 6 is a combined finding and conclusion.  It is supported by the circuit court's findings of fact and the parties' stipulated facts, and reflects an application of the correct rule of law.

The circuit court concluded:

> 7.    Under Hawaii Revised Statutes ("HRS"), Section 508D-1 and 508D-5, a seller or his agent has a duty to disclose to the buyer all material facts, i.e., "any fact, defect, or condition, past or present, that would be expected to measurably affect the value to a reasonable person of the residential property being offered for sale," so long as they are within the knowledge or control of the seller or can be observed from visible, accessible areas.

> 8.    HRS 508D-13 provides that if the sellers become aware of new information regarding the subject property and the information directly, substantially, and adversely affects the value of the residential real property, the seller shall provide an amended disclosure statement to the buyer disclosing the material fact within ten (10) calendar days after the seller's discovery of such information if the seller discovers such information prior to the recorded sale of the residential real property, and in any event, no later than twelve noon of the last business day prior to the recorded sale of the real property.

> 9.    [The Days]' failure to disclose information in the original disclosure form and failure to disclose subsequently obtained information that directly, substantially, and adversely affected the value of the subject real property as set forth herein, constitutes a violation of Hawaii Revised Statutes, Chapter 508D.

COL nos. 7 and 8 are right.  COL no. 9 is a combined finding and conclusion.  It is supported by the circuit court's findings of fact and reflects an application of the correct rule of law.

The circuit court concluded:

> 10.    Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement.  <u>Best Place, Inc. v. Penn Am. Ins. Co.</u>, 82 Haw. [sic] 120, 123, 920 P.2d 334, 337 (1996), <u>as amended</u>

(June 21, 1996).

> 11.    The [Days] breached the implied covenants of good faith and fair dealing inherent in the Purchase Contract by failing to cooperate with [Kreitman] in the performance of the contract and failing to do everything that the contract presupposes that each party will do to accomplish its purpose.

COL no. 10 is right.  COL no. 11 is a combined finding and conclusion.  It is not clearly erroneous, but it does not form an additional basis for recovery of breach-of-contract damages.  Nor does it form the basis for recovery of tort damages, because "there is no tort of bad faith outside the context of insurance claims."  Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 115 Hawai'i 201, 229, 166 P.3d 961, 989 (2007) (citation omitted).[5]

### 3.    The circuit court must either recalculate the damage award or conduct a new trial on the issue of damages.

The circuit court found, and the Days do not contest, that:

> 85.    Mr. Edmonds' charges for the [front lawn] water line repairs amounted to **$1,900.72**, which was paid in full by the Kreitmans.  First Am. Stip. FOF, at ¶41.
>
> . . . .
>
> 94.    The Kreitmans were billed **$34,134.54** by Clean Sewer Lines [to replace the existing water line with Type K copper line,] which was paid in full by the Kreitmans.  First Am. Stip. FOF, at ¶51.
>
> 95.    The amount billed by Clean Sewer Lines included approximately **$4,000 to $5,000** worth of gas line work unrelated to the replacement of the water line.  See Dep. Tr. of Gary Taylor, at 29:15-23, 32:19-23, 33:7-12, 36:8-25.
>
> . . . .
>
> 102.    Mrs. Kreitman accepted Mr. Broderson's proposal [to replace and re-route the water line between the backflow preventer and the water meter,] and the work commenced on or about February 6 or 7, 2015[,] and was completed in approximately six or seven weeks.  The Kreitmans paid the

---

[5]    Kreitman argues that the Days made this argument for the first time on appeal, but the Days' motion to dismiss Kreitman's complaint argued — correctly — that the tort of bad faith did not apply outside the context of an insurance policy.

11

estimated cost of **$6,302.14** in full.  First Am. Stip. FOF, at ¶57.

(Emphasis added).  Kreitman paid a total of $42,337.40 for various work and material.  The Judgment awarded "compensatory damages" of $37,337.40.  The difference of $5,000 appears to be the amount that the circuit court approximated Kreitman paid for gas line work unrelated to the water line replacement.  Although the circuit court found in favor of Kreitman and against the Days on all four counts of the complaint, neither the Findings, Conclusions, and Order nor the Judgment specified under which count(s) the damages were awarded.

The Days argue that the circuit court erroneously awarded damages for work and material over and above what was necessary to repair any water leaks that existed when the sale closed.  Their argument has merit.  Tort damages must have been caused by the defendant's breach of duty.  See, e.g., Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawaii 277, 292, 172 P.3d 1021, 1036 (2007).  Contract damages generally attempt to give the injured party the benefit of the bargain by awarding a sum of money that will, to the extent possible, put them in as good a position as they would have been in had the contract been performed.  Kawakami v. Kahala Hotel Invs., LLC, 142 Hawaiʻi 507, 514, 421 P.3d 1277, 1284 (2018).

At least some of the damages awarded by the circuit court were attributable not to the cost of repairing leaks that should have been repaired by the Days, but to improvements to the Property made by Kreitman.  For example, the original waterline was made of polyvinyl chloride (**PVC**) but Kreitman replaced it with Type K copper line.[6]  Taylor (the plumber) testified that "[s]ome things were done that weren't just to fix the water line. It was an upgrade of the system they had."  Taylor also testified that "the only reason [a backflow preventer] was moved is for

---

[6]  The testimony indicates that copper pipe is of better quality — and presumably more expensive — than PVC pipe, but the record on appeal does not contain evidence of the price difference between PVC and copper pipe when Kreitman had the work done.

esthetics."[7]  The Days should not have been held liable for these upgrade costs, under either a tort or contract theory of recovery.

Awarding a lump sum of damages for different claims is not reversible error.  <u>Rodrigues v. State</u>, 52 Haw. 156, 175, 472 P.2d 509, 521 (1970).  In this case, however, the circuit court's failure to state the amount awarded for each claim makes it impossible for us to amend the lump sum award when we have determined that the court erred about the amount of the award or the evidence necessary to sustain it.  <u>Id.</u>  The judge who presided over the jury-waived trial of this case has retired and is unavailable to classify or recalculate the damage award.  Accordingly, we remand to the circuit court for further proceedings consistent with this memorandum opinion including, if necessary, an evidentiary hearing or new trial on the issue of damages only.  <u>See</u> <u>In re Elaine Emma Short Revocable Living Tr. Agreement</u>, 147 Hawaiʻi 456, 471 n.30, 465 P.3d 903, 918 n.30 (2020); <u>cf.</u> <u>Hana Ranch, Inc. v. Kanakaole</u>, 66 Haw. 643, 649, 672 P.2d 550, 554 (1983) (noting that under HRCP Rule 63, "a successor trial judge cannot enter findings of fact and conclusions of law in a case which was tried before his predecessor.").

>  **4.  The circuit court must recalculate and explain, if necessary, its award of attorneys' fees.**

A "trial court's grant or denial of attorneys' fees and costs is reviewed under the abuse of discretion standard." <u>Kamaka v. Goodsill Anderson Quinn & Stifel</u>, 117 Hawaiʻi 92, 105, 176 P.3d 91, 104 (2008) (brackets omitted) (quoting <u>Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel</u>, 113 Hawaiʻi 251, 266, 151 P.3d 732, 747 (2007)).  The same standard applies to a review of the amount of an attorney's fee award.  <u>Chun v. Bd. of Trs. of the Emps. Ret. Sys. of Haw.</u>, 106 Hawaiʻi 416, 431, 106 P.3d 339,

---

[7]  The circuit court did not apportion the amount Kreitman paid to Taylor for relocating the backflow preventer vs. replacing the water line.

354 (2005). An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant. Id.

The circuit court awarded Kreitman $9,334.35 in attorneys' fees under Counts 1 (breach of contract) and 2 (breach of implied covenant of good faith and fair dealing), and $30,000 under Counts 3 (violation of HRS Chapter 508D) and 4 (misrepresentation). Attorneys' fees were recoverable for Counts 1 and 2 under HRS § 607-14 (subject to a twenty-five percent limit), and for Count 3 under HRS § 508D-16(d). Attorneys' fees were not recoverable for Count 4. The circuit court did not explain how the allocation of attorneys' fees was made. See Blair v. Ing, 96 Hawaiʻi 327, 332, 31 P.3d 184, 189 (2001). The amount of attorneys' fees recoverable under Counts 1 and 2 may also change depending on the circuit court's recalculation of damages on remand. Thus, we vacate the award of attorneys' fees and remand to the circuit court for proceedings consistent with this memorandum opinion.

Based upon the foregoing, we vacate in part the "Final Judgment in Favor of Plaintiff James Kreitman and Against Defendants James Milton Day, Jr. and Jennifer Ellen Demoss Day" entered on June 16, 2017, and this case is remanded for proceedings consistent with this memorandum opinion.

DATED: Honolulu, Hawaiʻi, May 19, 2023.

On the briefs:

Paul Alston,
Kristin L. Holland,
for Defendants-Appellants
James Milton Day, Jr. and
Jennifer Ellen Demoss Day.

Lisa Strandtman,
for Plaintiff-Appellee
James Kreitman.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge